F. S. VAUGHN, Appellant, v. WABASH RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, May 14, 1895.

1. **Common Carriers**: LIMITATION OF LIABILITY. A common carrier can not, by any contract, exempt himself wholly or partially from loss caused in whole or in part by his own negligence, but he, may by special contract, supported by an independent consideration such as a reduced rate of freight, protect himself against certain perils of transportation, or may limit his liability in amount, when his own negligence is not a cause, or a concurring cause, of the loss.

2. ———: ———. Furthermore, the carrier and shipper may, by special contract liquidate, in advance, the carrier's liability in case of loss or damage to freight from any cause; but such contract must be fairly entered into, and distinctly shown to have been intended to liquidate and cover all damages to which the carrier would be subject at common law, and the amount fixed must not be tantamount to an exemption from liability.

3. ———: ———. And *held*, under the conditions of the latter principle, that a contract for the carriage of cattle which limited the liability of the carrier, in the event of any unusual delay or detention from any cause whatever, to the amount expended by the shipper for food and water for the stock, was illegal.

4. ———: MEASURE OF DAMAGES FOR DELAY IN SHIPMENT OF CATTLE. *Held*, in the course of discussion, that, when cattle are delayed in transit through the negligence of the carrier, the shipper is not entitled to recover as part of his damages any decline in their market value between the time when they should have arrived and that of their actual arrival at the point of destination.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*W. W. Fry* and *S. M. Edwards* for appellant.

*Geo. S. Grover* for respondent.

BIGGS, J.—This is an action for damages to a lot of fat cattle shipped from Martinsburg, Missouri, to Chicago, Illinois. The petition alleges, in substance, that the cattle were delivered to the defendant at 12 P. M. on the eleventh day of June, 1892, at Martinsburg; that by proper diligence they should have arrived at Chicago at 5 o'clock on the morning of the thirteenth, but that on account of the negligence of the defendant they were delayed and did not reach St. Louis until 11 o'clock A. M. the next day, and that, by reason of this delay and the negligent running of the train, one steer was so severely injured that he died; that, instead of forwarding the shipment through to Chicago, the defendant wrongfully and negligently unloaded the cattle in pens in East St. Louis, where they remained for two days; that they were reloaded at 3 o'clock P. M. on the fourteenth, and that, after detaining them on the side-track for three hours, they were started to Chicago, arriving there the following day at 11 o'clock A. M. It was claimed that by this unusual and unnecessary delay the cattle were overheated, bruised, wounded and reduced in weight and depreciated in value, and that an additional expense of $50 was incurred for feed of cattle and board of hands, all to plaintiff's damage in the sum of $750.

The answer is a general denial, and it also sets forth that the cattle were shipped under a written contract, in which the plaintiff agreed to water and feed the stock at his own expense and risk, and to accept, as full compensation for any damages caused by delay, the amount expended by him in the purchase of food and water for the stock; that on the morning of the

twelfth the defendant delivered the cattle to a connecting carrier in St. Louis, who, in turn, transported them to the Union Stock Yards in East St. Louis, where they were unloaded at the request of the plaintiff; that on the afternoon of the fourteenth the plaintiff requested the defendant to complete the transportation to Chicago, which it did.

The plaintiff filed a replication, putting in issue the new matter contained in the answer.

There was no dispute at the trial about the delay in the shipment. The evidence for the plaintiff tended to prove the allegations concerning the bad condition of the cattle when they arrived at Chicago, and that it was attributable to the delay. The delay at Martinsburg was caused by the derailment of a train, the cause or causes of which do not appear. As to the cause of the delay at the stock yards at East St. Louis, there was evidence tending to prove that, when cattle or other live stock are received for shipment to Chicago, it is the duty of the conductor of the train receiving them to immediately notify the defendant's agent at St. Louis of the receipt of the stock and their destination, who in turn must notify the defendant's agent in East St. Louis, whose duty it is to make arrangement for the continuation of the transportation. The conductor having in charge plaintiff's stock performed his part of that duty, but for some reason the agent at St. Louis was not notified. The cattle arrived at East St. Louis on Sunday, and, as no notice had been received by the local agent there, no arrangement had been made for further shipment; so there was nothing to do but to unload the stock. The proof was that the plaintiff paid $6 for feed at East St. Louis.

The defendant read in evidence the contract under which the cattle were shipped. Its execution was not denied. It recited that, in consideration of a reduced

rate of freight, the plaintiff was to take care of the cattle and load and unload them at his own risk; that neither the defendant nor any connecting carrier was to be responsible for any loss or damage to the cattle while being loaded, forwarded or unloaded, or for injuries sustained from suffocation, overloading or fright, or from the crowding of the animals upon each other; that neither the defendant nor any connecting carrier was to be responsible for any delay caused by storms, failure of machinery or cars, or from obstructions of track from any cause; and that, in the event of any unusual delay or detention of the cattle *from any cause whatever*, the plaintiff was to accept, "as full compensation for all loss or damage sustained in *consequence of such delay, the amount actually expended by them in the purchase of food and water for the stock aforesaid.*" The defendant offered additional proof that there were two rates of freight from Martinsburg to Chicago; that the rates were fixed by the Interstate Commerce Commission, and that the rate named in the contract was the lower rate in which the common law liability of the defendant as a common carrier was limited. The evidence for the plaintiff as to rates was negative in its character, that is, that the witnesses knew of but one rate. There was no evidence that there was actually but one rate.

All instructions asked by the plaintiff were refused, except the following, which the court gave, to wit: "The court instructs the jury that the contract read in evidence on the part of the defendant does not relieve the defendant from any loss or damage suffered by plaintiffs to their cattle while being carried by the defendant, which resulted from the negligence, misconduct or carelessness, of the defendant."

The defendant asked one instruction, which the court gave, to wit: "The court instructs the jury that,

under the pleadings and the evidence in this case, if the jury find a verdict in the plaintiff's favor, such finding and verdict can not exceed the sum as shown by the testimony expended by the plaintiff in the purchase of food and water for his cattle while the same were delayed at the National Stock Yards in East St. Louis, Illinois, to wit, the sum of $6.''

The applicatory law, as we gather it from the decisions in this state, is that a common carrier can not, by any contract, whether supported by an independent consideration or not, exempt himself wholly or partially from loss or damage caused to freight by his own negligence in whole or in part; but he may, by special contract, supported by an independent consideration, protect himself against certain perils of transportation, or may *limit* his liability in amount where his own negligence is not a cause or concurring cause of the loss. Again, the carrier and shipper may, by special contract, liquidate the carrier's liability in advance in case of loss or damage to freight from *any cause*, and in such case the contract of liquidation *fairly entered* into will supply the consideration to support itself. But, in order that this rule may be invoked by the carrier when sued, it must distinctly appear that the damages were intended to be liquidated and were intended to cover *all* damages to which the carrier would be subject at common law in case of damage or loss, and the amount fixed must not be tantamount to *an exemption* from liability.

The evidence tended to prove, and the jury might have so found, that the delay was caused by the failure of the agent of the defendant at St. Louis to notify the agent at East St. Louis of the receipt of the cattle. Therefore, the limitation in the contract as to the common law liability of the defendant as a common

VOL. 62—30

carrier is not a question in the case. If there is a valid contract *liquidating* the damages in case of loss or injury caused by delay, then it is immaterial whether there was a reduced rate of freight or not, for the contract of liquidation furnished the consideration for the special agreement. Therefore, under this record we need only determine whether there is a *valid* contract liquidating the damages.

This court has held that such a contract, to be valid, must have been *fairly* entered into (*Conover v. Pacific Express Company*, 40 Mo. App. 31; *Rogan v. Railroad*, 51 Mo. App. 665); and the supreme court, in the case of *McFadden v. Railroad*, 92 Mo. 343, decided that such contracts "are to be tested by their fairness, justice, and reasonableness." In the case of *Harvey v. Railroad*, 74 Mo. 538, Judge HOUGH, speaking for the court, said: "This court has repeatedly held that public policy will not permit a common carrier to contract for *exemption* from liability on account of the negligence of itself, or its servants." We are of the opinion that the contract here can not stand the foregoing tests. As applied to the subject-matter, the attempted liquidation of the damages is unfair, unjust and unreasonable. The damages caused by delay in such a shipment might reach several thousand dollars. In this case, according to the evidence for the plaintiffs, it did reach several hundred dollars. Under the terms of the contract and the instruction of the court, the liability of the defendant therefor was satisfied by a judgment for $6. This was equivalent to a *total exemption*, which no court has ever tolerated where the negligence of the carrier has intervened. We conclude that the instruction asked by the defendant ought to have been refused.

In view of a retrial we deem it proper to say that, under this record, there can be no recovery for the

steer that was killed between Martinsburg and St. Louis. There was no evidence of negligence by the defendant over that portion of the route, and, as the evidence is conclusive that the shipment was made at a reduced rate, the defendant can not be held for that animal. Neither is the defendant chargeable with damages suffered on account of a decline in the market, if in fact there was a decline in the market price of cattle between the date the cattle should have arrived at Chicago and the day on which they did arrive. It would be a novel proposition that, when there has been delay in a shipment and there has been an advance in the market, the carrier when sued for damages for the delay could recoup the amount realized by the shipper by reason of the advance. This we think is sufficient to show that the damages against the carrier ought not to be *increased by a decline* in the market under like circumstances.

The judgment of the circuit court will be reversed, and the cause remanded. All the judges concur, Judge BOND in the result.