VAUGHN *et al.* v. WABASH RAILROAD COMPANY,
*Appellant.*

In Banc, June 22, 1898.

| | |
|---|---|
| 145 | 57 |
| 148 | 19 |
| 145 | 57 |
| 152 | 551 |
| 145 | 57 |
| 162 | 523 |
| 145 | 57 |
| 175 | ¹188 |
| 176 | ¹ 48 |

1. **Appellate Jurisdiction:** CONSTITUTIONAL QUESTION: WHEN INVOKED. Where no constitutional protection is claimed in the trial court, it can not be invoked here for the first time in such a way as to give this court jurisdiction of the appeal.

2. ———: ———: FEDERAL QUESTION. Where the defense offered by appellant in the trial court was a *compliance* with the requirements of a United States statute, the *validity* of that statute is not so involved as to give this court jurisdiction of the appeal as a "case involving the validity of a statute of the United States."

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*F. W. Lehmann* and *George S. Grover* for appellant.

*W. W. Fry* for respondents.

MARSHALL, J.—Plaintiffs sue for $750 damages for loss in weight of cattle, injury to one steer, and extra expense for feed, alleged to have been caused by the negligent delay of defendant in transporting them from Martinsburg, Missouri, *via* St. Louis, to Chicago.

The case was tried in the circuit court of Audrain county, and under the direction of the court a verdict was rendered for plaintiffs for $6. Plaintiffs appealed to the St. Louis Court of Appeals, where the judgment below was reversed and the cause remanded. *Vaughn v. Railroad*, 62 Mo. App. 461. Plaintiffs then filed an amended petition, making more specific the delays complained of. Defendant answered admitting its

incorporation, denying all other allegations of the petition, setting up the terms of the contract of affreightment, and pleading specially that it had printed and kept open for inspection at its freight offices at Martinsburg, schedules showing the various rates and charges for transportation of cattle between Martinsburg and Chicago, and that they were filed with the Interstate Commerce Commission of the United States in Washington, D. C., and that it had complied, in all respects, with the Interstate Commerce Law, and claimed, "that said contract, and all of its conditions was made subject to and in accordance with the laws of the United States, made by the Congress thereof, under the power granted to the Congress of the United States of America to regulate commerce among the several States of its Union." The plaintiff's reply was a general denial.

The sixty-four head of fat cattle were loaded on defendant's train about 12 o'clock Saturday night, June 11, 1892, for shipment to Chicago, *via* St. Louis. On account of an accident to the train ahead of the one carrying the cattle, they did not leave Martinsburg until about 5 o'clock Sunday morning and arrived at St. Louis about 9 o'clock that morning. They were delayed in St. Louis about two hours and were then taken to the National Stock Yards, in East St. Louis, and unloaded there between 11 and 12 o'clock on Sunday. Plaintiffs objected to stopping in East St. Louis and wanted to go straight through to Chicago, but were told there was no train going through that day, and that the stock yards would not load any cattle on Sunday unless previous notice to that effect was given on Saturday by the shippers, and no such notice was given in this case, and that the laws of Illinois prohibited labor of this kind on Sunday. Thereupon plaintiffs told them to unload the cattle and not let them stand in the cars. Plaintiffs admit they did not

want the cattle shipped from East St. Louis on Sunday night because they would reach Chicago too late for Monday's market. They did not want them shipped on Monday, because Tuesday is an "off-day" in the Chicago cattle market. So they had them loaded Tuesday afternoon about 2 o'clock, they were switched around until 6 o'clock, when the train started for Chicago and arrived there about 11 o'clock Wednesday, and were sold on Thursday. They had shrunk in weight, one had been injured so it had to be sold for $20 in East St. Louis, and plaintiffs paid some $18 for feed and care in East St. Louis.

Defendant relied, partly, upon section 4386, Revised Statutes, United States 1878 (p. 848), which prohibits railroads engaged in interstate commerce from confining cattle in cars for a longer period than twenty-eight consecutive hours without unloading them for rest, water and feed for a period of at least five consecutive hours, unless prevented from so doing by storm or other accidental causes. Defendant then contended that the cattle had been confined in the car for fifteen consecutive hours between Martinsburg and East St. Louis, and that the running time from East St. Louis to Chicago was fifteen hours and fifteen minutes, so that if the cattle had gone straight through on this occasion they would have been on the cars continuously for thirty hours and fifteen minutes, which would have been a violation of the laws of the United States. The defendant further defended upon the ground that the delay between Martinsburg and St. Louis was accidental, for which it was not liable by the express terms of its contract; that the delay in East St. Louis was partly because of the regulation as to loading at the National Stock Yards, for which it was not liable, as it was only liable under its contract as a forwarder between St. Louis and East St. Louis, and partly by

the voluntary act of the plaintiffs in not wishing the cattle shipped on Sunday evening or on Monday, and holding them at East St. Louis until Tuesday so as to reach the Chicago market on Wednesday.

The defendant asked and the court refused the following instruction: "The court instructs the jury that it was the duty of the defendant, when the plaintiffs' cattle had been confined on board of the cars of the railroad of defendant for twenty-eight hours, to cause or permit said cattle to be unloaded, fed and watered, and rested for a period of not less than five hours at the time and place in question."

The court of its own motion gave the following instruction : "The court instructs the jury that it was the duty of the defendant to cause or permit plaintiffs' cattle to be unloaded, fed and watered at the National Stock Yards in East St. Louis, or at some other convenient point in said city, at the time and place in question, if it be a fact that the cattle had been confined in the cars and in transit on the railroad of the defendant fifteen hours, and if it also be a fact that said cattle would necessarily remain in the cars and in transit on said railroad eighteen hours longer before arriving in Chicago; and the jury are further instructed, that upon said facts, hereinbefore stated, the unloading and feeding of said cattle, at said yards, at said time, was not an act of negligence on the part of defendant for which the plaintiffs can recover in this action, unless the fact that the said cattle had, when unloaded, then been confined in the cars more than ten hours, was caused by the negligence of defendant."

There was a verdict for plaintiffs for $352.80, and defendant appealed to this court.

I. At the threshold of this case we are met with the question of the right of the appellant to have this case reviewed by this court. Our appellate jurisdiction is

said to arise from the fact that there is a Federal question involved. It is apparent that defendant replied, *first*, upon the protection of its contract of affreightment, as to all delays except those at East St. Louis, and as to them upon the regulations of the National Stock Yards, the laws of the State of Illinois prohibiting the loading of cattle on Sunday, and the voluntary act of the plaintiffs in holding the cattle at East St. Louis from Sunday to Tuesday evening for business reasons; and, *second*, upon the provision of section 4386, Revised Statutes, United States, relating to the transportation of live stock. As to the first, we have no jurisdiction to determine the controversy (the recovery being only $352.80) unless the second contention brings the case within our jurisdiction.

The common expression that a case involves a "Federal question," is well understood by the profession but is not strictly accurate, under our Constitution. Section 12 of Article VI of the Constitution of 1875, gives this court appellate jurisdiction, "in cases involving the construction of the Constitution of the United States . . . . . . . ; in cases where the *validity* of a treaty or statute of or authority exercised under the United States is drawn in question."

The mere statement of this case is sufficient to show that it does not involve construction of the Constitution of the United States. No constitutional protection was claimed, in the trial court, and it can not therefore be invoked here for the first time. *Oxley Stave Co. v. Butler Co.*, 166 U. S. 648; *Pim v. St. Louis*, 165 U. S. 273.

It can only be, then, that the *validity* of a treaty or statute of or authority exercised under the United States is drawn in question in this case that jurisdiction can be claimed for this court in this case. The answer of the defendant alleged compliance with the

Interstate Commerce Law of the United States. The reply was a general denial. The validity of that Federal statute was not drawn in question. The reply put in issue the averment of *compliance* with the law, not the *validity* of the law. The testimony wholly failed to show any attempt by defendant to exercise any authority under the Federal statute relating to the transportation of live stock. The cattle did not reach St. Louis on Sunday morning in time to be shipped straight through to Chicago; so they were turned over to the Terminal Railroad Association, which took them to the National Stock Yards. They arrived there about 12 o'clock on Sunday. They had not been on the cars then more than fifteen hours. They were not unloaded pursuant to the mandate of the Federal statute which prohibited their being confined in the cars more than twenty-eight consecutive hours, but they were unloaded because there was no train leaving East St. Louis for Chicago until Sunday night, which would get to Chicago too late for the Monday market, and under these circumstances the plaintiffs preferred to keep them in East St. Louis over Tuesday (that being an "off-day" in the Chicago cattle market) so as to reach Chicago for the Wednesday market. It is idle, therefore, to say that the defendant unloaded the cattle in East St. Louis on Sunday, when they had only been confined in the cars for fifteen hours, because of the authority of the Federal statute. The contention becomes more untenable when we reflect that one of the defenses relied on by defendant is that its road terminates at Eighteenth street in St. Louis, and begins again at the intersection of its eastern tracks with the tracks of the National Stock Yards in East St. Louis, and that when it carried the cattle to Eighteenth street in St. Louis and delivered them to the Terminal Railroad Association, it acted as forwarder only, and its liability as common

carrier did not begin again until the Terminal Railroad Association redelivered the cattle to it in East St. Louis, and that the cattle were unloaded while at the stock yards, and when it had nothing to do with them. We do not decide whether these claims relieved defendant of liability, but we do decide that whether they do or not, they demonstrate that the contention that the validity of a statute of or authority exercised under the United States is thereby drawn in question, is not tenable, and they further satisfy the average mind that it is not a fact that the cattle were unloaded in East St. Louis in obedience to the Federal statute referred to.

The court refused defendant's instruction defining its duty as to unloading the cattle under the Federal statute, and gave one of its own motion which was evidently intended to declare the same legal principle and to make it apply to the facts in this case, and in so doing the number of hours the cattle had been in transit and the number they had been confined in the cars were badly confused and misstated. But there was no error committed by the court in either respect, of which the defendant can complain, for under the facts in the case the defendant was not entitled to any direction to the jury in this particular, as it had wholly failed to bring itself within the protection of that law, and the court's difficulty in applying a legal principle to a case where there were no facts upon which to predicate the law is made manifest, and the resultant confusion not to be wondered at, much less made an assignment of error.

There can, therefore, be no doubt that this court has no appellate jurisdiction in this case, and hence we have no right to determine the validity of the contract of affreightment or of defendant's liability under the facts of the case. We, therefore, transfer the case to the St. Louis Court of Appeals to be proceeded with therein. It is so ordered. All concur.