THE STATE ex rel. HORTON et al. v. BLAND et al., Judges.

In Banc, February 28, 1905.

1. **Appellate Jurisdiction: Constitutional Question: Raised by Trial Judge.** Where the parties to the suit have raised no constitutional question, it is not the province of the trial judge to raise one, and if he does so in a written opinion the Supreme Court does not thereby obtain jurisdiction of the appeal, unless it was necessary for the decision of the trial court that a constitutional question be determined.

2. ———: ———: **Statute Not Applicable: Obiter.** Where the trial court held that the statute (sec. 4277, R. S. 1899) in reference to the foreclosure of a deed of trust by suit had no application to the case in hand, it was unnecessary and *obiter* for the court to go further and, by way of argument, to state in its written decision that, if such statute were applicable, it would be unconstitutional as an impairment of contracts. And the same is true of the Court of Appeals. When the case reached that court, and that court decided that that statute was not applicable to the case, no constitutional question was drawn into the case by that court's holding that the statute was or was not constitutional.

3. ———: ———: **How Raised.** A constitutional guaranty must have been invoked, and must have been denied, in the trial court, in order to so raise a constitutional question as to give the Supreme Court appellate jurisdiction. In only one other way can a constitutional question be involved in a case, and that is, the case must be such that no judgment can be rendered without passing upon a constitutional question.

Mandamus.

PEREMPTORY WRIT DENIED.

*James E. Withrow* for relators.

As far as the judges of the St. Louis Court of Appeals are concerned, they abide by the conclusion reached by them, that it is impossible to decide this case without passing upon constitutional questions. The court of appeals must have discovered constitutional questions in the record of the case, and it is not to be presumed for a moment that they found them elsewhere when they say in their opinion, ''We can not dispose of the appeal without deciding these constitutional questions and our jurisdiction is unaffected by them because the record does not show that the defendant raised them below, though their brief states they did. But it is not enough to oust the jurisdiction of this court. Lang v. Callaway, 134 Mo. 491. To do that a constitutional question must be raised in the trial court and the benefit of some constitutional provision denied to the party who claims it. Parlin v. Hord, 145 Mo. 117. We do not see how the question can always be shown by the record to have been thus raised and decided, nor how it can be done in this case. The defendant had no reason to make the constitutional point by a declaration of law as this is an equity cause; they succeeded in the trial court on other grounds, and, therefore, had no cause to raise it by a motion for a new trial.'' The last paragraph above quoted sets forth in a clear and concise manner the true situation of relators. They raised the question of the constitutionality of the act of 1891 (sec. 4277, R. S. 1899), as well as it could have been raised in the court below. In the circuit court the case was decided in relators' favor on other points, and left them powerless to save any exception to its ruling upon section 4277. From this ruling of the circuit judge it clearly appears that a constitutional question was raised in that court and decided adversely to Horton et al. Under the circumstances of this case, we could not have raised these con-

stitutional questions in this case in any more effectual manner than we have done. The moment the court of appeals discovered in any way that the case could not be decided by it without passing upon constitutional questions, it became the duty of that court at once to transfer the case to this honorable court.

*T. D. Cannon* and *E. T. Farish* for intervenors.

There was no constitutional question involved, and no constitutional question was raised in the circuit court so as to oust the jurisdiction of the St. Louis Court of Appeals. It manifestly appears that there was nothing in the pleadings raising the alleged constitutional question. Respondents had the opportunity to attack by their reply the constitutionality of said section 4277, Revised Statutes 1899, but failed and neglected to do so. Parlin & Orendorff Co. v. Hord, 145 Mo. 116; Vaughn v. Railroad, 145 Mo. 61; Shewalter v. Railroad, 152 Mo. 551; State v. Raymond, 156 Mo. 117; Clark v. Porter, 162 Mo. 523; Hanlon v. Pub. Co., 167 Mo. 121; Ash v. Independence, 169 Mo. 77.

MARSHALL, J.—This is an original proceeding by mandamus to compel the St. Louis Court of Appeals to certify to this court for its decision, the case of Augusta Kreyling et al. v. Benjamin Horton et al., on the ground that a constitutional question is necessarily involved therein, and hence that court has no jurisdiction. The judges of the court of appeals make return to the alternative writ, heretofore issued, by simply transmitting the papers and files in said case to this court. The relators move for judgment on the return, and ask that the alternative writ be made peremptory. The plaintiffs in that case, the Kreylings, move for leave to "intervene" in the case and to quash the alternative writ of mandamus aforesaid on the ground that no constitutional question was raised by relators in the

said case in the circuit court, and as this court has no jurisdiction on any other ground, the St. Louis Court of Appeals, and not this court, has appellate jurisdiction.

The case made is this:

David Kreyling owned a certain lot on Franklin avenue in St. Louis. On July 13, 1876, he executed a deed of trust thereon to M. B. O'Reilly as trustee, to secure a note for three thousand dollars. Thereafter, on April 23, 1877, said David Kreyling executed a second deed of trust on the same property to Louis J. Holthaus, as trustee, to secure a note for $1,189.95 with eight per cent interest, in favor of Benjamin Horton & Co. Thereafter, Kreyling remained in possession of the property until his death on March 26, 1889, and his heirs remained in possession until October 18, 1901. No administration was had upon David Kreyling's estate until June 8, 1898, when the Union Trust Company was appointed administrator thereof, administered upon it, and was finally discharged on October 17, 1900. Neither David Kreyling, in his lifetime, nor his heirs or legal representatives have ever paid anything of the principal or interest secured by the second deed of trust, nor was any demand made for payment thereof after 1881 or 1882, nor was the debt presented to the probate court for allowance against his estate. The firm of Benjamin Horton & Co. was merged into a corporation called B. Horton & Co. Mercantile and Manufacturing Corporation, in September, 1879, and said note and second deed of trust was transferred to said corporation. That corporation ceased to do business and went into liquidation, and the relators herein are the sole remaining stockholders and directors of said corporation and claim as trustees in liquidation thereof. The second mortgage and the note secured thereby have been lost or mislaid and were not produced at the trial.

It seems that Kreyling or his heirs kept the inter-

est on the first deed of trust paid up until 1900, and that default having then been made, and the principal being due, the trustee thereunder, O'Reilly, foreclosed the same, and Benjamin Gerdelman became the purchaser of the property for the sum of five thousand dollars, and after paying the principal, interest and expenses, there remained in said O'Reilly's hands the sum of $1,726.55. The Kreyling heirs brought suit against O'Reilly for said balance. He answered that the fund was claimed by both the Kreyling heirs and Horton & Co. and asked that the latter be made parties to the suit, and that he be allowed to pay the money into court and that said claimants be required to interplead therefor. The court so ordered, and O'Reilly paid the money into court, was allowed one hundred dollars for expenses, and was discharged, and said claimants interpleaded for the fund.

The interplea of the Hortons sets out the history of the second deed of trust; the transfer of the note and deed of trust by Horton & Co. to the incorporated company; the liquidation of that company and that they are the trustees thereof and as such are entitled to the fund; the possession of the land by the Kreylings, but deny that such possession was adverse to them; that the fund is the surplus arising out of the foreclosure of the first deed of trust, claim that they are entitled to the same, and ask judgment therefor.

The interplea of the Kreylings—which is also an answer to the interplea of the Hortons—is, first, a general denial of the Hortons' interplea; second, a plea of the ten years' Statute of Limitations to the Hortons' claim; third, a plea that the Hortons' claim did not accrue within twenty years before the commencement of that action; fourth, a plea of laches, in that the Hortons' claim was not asserted or sought to be enforced within ten years; fifth, a general plea that the Hortons' claim is barred by the Statute of Limitations of this State, without specific reference to any particular stat-

ute; sixth, a plea that the Hortons' claim is barred by the two-year statute of limitations; seventh, a plea that they had been in the continuous, open, notorious and adverse possession of the property covered by the deeds of trust as against the Hortons and the whole world, for more than ten years before the commencement of the suit; eighth, a plea that they are the widow and heirs of David Kreyling, who died March 26, 1889, intestate, and the appointment of the administrator and the final settlement and discharge of the administrator, the execution of the first deed of trust, its foreclosure, and that the fund is the surplus arising out of that foreclosure, and that they are entitled to the fund, and they ask judgment therefor.

The reply of the Hortons is a general denial.

The trial in the circuit court showed the facts to be, substantially, as hereinbefore stated. Various exceptions were saved by each of the interpleaders to the rulings of the court, but nothing was said during the course of the trial by either party about the constitutionality of any of the various statutes of limitations pleaded by the Kreylings as a bar to the claim of the Hortons. Neither party asked any instructions, so that the theories upon which the parties tried the case are discoverable only from the pleadings and the acts and course of conduct of the parties during the trial. The trial court rendered a written opinion in the case, which is not embodied in the bill of exceptions, but is printed in the brief of the Hortons filed in the court of appeals. From this opinion it appears that the trial court held, first, that although the Hortons' note was barred by limitation, they were not barred from enforcing their mortgage by suit or foreclosure outside of court; second, that the possession of the Kreylings was not adverse to the Hortons; third, that the Kreylings' contention that the Hortons' claim is barred by sections 4276 and 4277, Revised Statutes 1899 (being the act of February 18, 1891, Laws 1891, p. 184), is untenable,

because section 4276 applies only to mortgages or deeds of trust that were executed after that act went into effect, and, therefore, could not apply to the Hortons' mortgage which was executed in 1877, and because section 4277 applies only to suits to foreclose mortgages or deeds of trust that had been executed prior to the passage of the act of 1891, and did not apply to or affect the foreclosure thereof by the act of the parties, and that this was not a suit to foreclose the Hortons' deed of trust. The learned trial judge at this point made the first and only reference in the case to the constitutionality of section 4277, by saying, *arguendo,* that the difference between the language employed in sections 4276 and 4277 must have been intentional on the part of the Legislature, and the construction he placed upon section 4277, that it applied only to suits to foreclose the mortgage and not to extrajudicial proceedings to foreclose it, must have been the construction the Legislature intended to be placed upon that section, in order to avoid any question as to the constitutionality of that section, for he further argued that while statutes of limitations affect only the remedy, and statutes which allow a reasonable time for the commencement of actions upon existing causes of action after the taking effect of a change in such statutes, have uniformly been held to be valid, still if section 4277 be construed to affect the power of sale under the mortgage or deed of trust, "it would be to that extent unconstitutional, as affecting obligations of a pre-existing contract. The power of sale under a mortgage or deed of trust is a contractual right which could not under the decisions be divested;" fourth, that the Hortons' claim was not barred by laches, because the evidence does not disclose any injury to the Kreylings resulting by the delay in enforcing their claim.

And, therefore, the trial court awarded the fund to the Hortons. After proper steps the Kreylings appealed to the St. Louis Court of Appeals.

The St. Louis Court of Appeals held, first, that section 4276 has no application to the Hortons' deed of trust; second, that the surplus in court stands in lieu of the land so far as the Hortons' deed of trust is concerned, and is realty and not personalty *quoad* that deed of trust; third, that section 4277 applies as well to extrajudicial foreclosures of mortgages or deeds of trust as to suits to foreclose them, and that said section bars the Hortons' claim; fourth, that section 4298 applies only to actions for the recovery of real estate, and has no application to suits to foreclose, or to extrajudicial foreclosures of, mortgages or deeds of trusts; fifth, that counsel for the Hortons attack the constitutionality of section 4277, on the grounds that it impairs the obligation of their contract and that it is retrospective, and that although the record does not show that the Hortons raised such questions, or that they were decided against them, in the trial court, still the court can not decide the case without passing on the constitutional question, and as its jurisdiction in that regard was not challenged, it would do so, because it could not see how the Hortons could have raised that question in the trial court, and because the court believes it has jurisdiction to pass upon the constitutional question under the decisions of this court in Lang v. Callaway, 134 Mo. 491, and Parlin & Orendorff Co. v. Hord, 145 Mo. 117, and accordingly the court considered the constitutional question, and held that section 4277 is constitutional, and, therefore, that court reversed the judgment of the trial court and remanded the case with directions to the trial court to enter judgment for the Kreylings for the fund in court.

Thereupon the Hortons secured from this court the alternative writ of mandamus aforesaid.

I.

The Hortons raised no constitutional question in the trial court so far as the record shows. The Krey-

lings pleaded the act of 1891 as a bar to the Hortons' claim, as they did also the ten- and twenty-year Statutes of Limitation and the laches of the Hortons. The Hortons did not raise any question as to the constitutionality of any of the statutes of limitation pleaded by the Kreylings. The circuit court decided that section 4276 had no application to this case because it related only to mortgages that were executed after the passage of the act, and also decided that section 4277 relates only to suits to foreclose mortgages or deeds of trust, and not to extrajudicial foreclosure, and that the case before it was not a suit to foreclose the Hortons' deed of trust, and therefore that section did not apply to the case. The trial court argued that this must have been the intention of the Legislature in enacting section 4277, for whilst a statute of limitations affects the remedy and the time allowed for the assertion of an existing right could be legally shortened, if a reasonable time was allowed therefor after the statute took effect, nevertheless, it would be unconstitutional to limit the time within which existing mortgages could be foreclosed, because the right of foreclosure was a part of the contract, which could not be impaired by subsequent legislation.

It is manifest, however, that this was merely an argument in support of the correctness of the construction the trial court placed upon section 4277, and was not intended by the court as a necessary part of its judgment, for if section 4277 had no application to the case before the court for decision, a decision as to the constitutionality of that section would be entirely unnecessary and *obiter*. In other words, under the issue framed in that case, the trial court decided that section 4277 was inapplicable to that case and hence the constitutionality of that section was not necessary or pertinent to the decision of the case. And even if the court had decided that said section was applicable to that case, there was no question as to the constitutional-

ity of that section before the court for its decision. The Hortons had raised no such question, and it was not necessary to the decision of the case before the court, for the court could simply have applied the statute to the case made, and have entered judgment accordingly. It was not the duty or province of the court to raise a constitutional question as to the statute when the parties litigant had not done so.

And the same is true as to the St. Louis Court of Appeals. For the decision of that court that section 4277 applied to the case and barred the Hortons' mortgage, disposed of that question, so far as it was involved in the case, and the decision as to the constitutionality of that section was not at all necessary to a decision of the case made, nor involved in the case, either by being raised by the parties, or because the case could not be decided without deciding whether the statute was constitutional or not.

In other words, under the issues joined and the case made, the question as to sections 4276 and 4277, was whether they applied to the case at bar or not, and not whether those sections or either of them were or were not constitutional.

The court of appeals said they could not decide the case without deciding the constitutionality of section 4277, and that this being a suit in equity and the Hortons having won in the circuit court, they could not see how they could have raised a question as to the constitutionality of that section in the trial court, or that it was necessary for them to do so, In this, that learned court was in error. It has already been pointed out that it was not necessary to the decision of the case that the court should pass upon the constitutionality of that section, and it is easy to see that if the Hortons had desired to raise that question they could easily have done so, by pleading that matter in their reply to the Kreylings' plea of that statute as a bar to their

right to the fund and to their deed of trust. They did not do so.

This court has laid down the rule that a constitutional guarantee must be invoked, and it must have been denied in the trial court in order to raise a constitutional question so as to give this court appellate jurisdiction. [Price v. Blankenship, 144 Mo. 203; Ash v. Independence, 145 Mo. 120, s. c., 169 Mo. 77; Parlin & Orendorff Co. v. Hord, 145 Mo. 117; Vaughn v. Railroad, 145 Mo. 57; Shewalter v. Railroad, 152 Mo. l. c. 551; State v. Raymond, 156 Mo. 117; Clark v. Porter, 162 Mo. l. c. 523; Hanlon v. Pulitzer Pub. Co., 167 Mo. 121; Coleman v. Cole, 158 Mo. 253; Brown v. Railroad, 175 Mo. 185; St. Joseph v. Ins. Co., 183 Mo. 1; Shaw v. Goldman, 183 Mo. 461.]

In Brown v. Railroad, supra, it was said: "If neither party raises a constitutional question, then the case will be decided by the appellate court that has jurisdiction of the appeal on other grounds, the same as if it had not been possible to raise a constitutional question. In short, a constitutional question must be raised before it can be involved, and if it is not involved then the decision of the case can decide no such question. In this respect a constitutional question differs from a jurisdictional question which can be raised for the first time in an appellate court. A party can waive a constitutional question, by not raising it for instance, but he can not waive the jurisdictional question, even expressly."

There is only one other way in which a constitutional question can be involved in a case, and that is, where the case is such that no judgment can be rendered in the case without passing upon a constitutional question. Or otherwise stated, where a constitutional question is necessarily involved. [State ex rel. v. Smith, 141 Mo. 1; State ex rel. v. Smith, 152 Mo. 444; Kirkwood v. Meramec Highlands Co., 160 Mo. l. c. 118; State ex rel. Curtice v. Smith, 177 Mo. l. c. 94.]

Neither of these conditions is present in the case of Kreyling v. Horton. The parties raised no constitutional question, and the decision of no such question was necessary to the decision of that case. The court could have decided that case by holding that section 4277 did not apply to the case, as the trial court did, or that it did apply to the case, as the court of appeals did, or either court could have decided the case against the Hortons on the ground that their mortgage was barred by the ten-year Statute of Limitations or the common law presumption of payment, or by their laches, and such decision would have been a matter of error or not, but would not involve a constitutional question. It is not the province of this court, in this case, to decide whether the decision of the circuit court or that of the court of appeals was right as to the proper construction of section 4277, or as to its application to the facts in judgment in the case of Kreyling v. Horton, and nothing that is herein said must be construed as any expression of opinion by this court on those questions or on any other matter than the appellate jurisdiction of this court in that case.

The result is that this court has no appellate jurisdiction of that case, and, therefore, the alternative writ heretofore issued is quashed, and a peremptory writ of mandamus is denied, and the papers and files in the case of Kreyling v. Horton, sent to this court by the St. Louis Court of Appeals, under the alternative writ, are ordered transmitted to the St. Louis Court of Appeals.

All concur.